(57 App. Div. 227.)

CELLERY v. JOHN HANCOCK MUT. LIFE INS. CO.

(Supreme Court, Appellate Division, Third Department.   January 9, 1901.)

INSURANCE—RIGHT TO CHANGE BENEFICIARY.

>    Plaintiff sent for one of defendant's agents to insure her husband's
> life, and the agent prepared a "proposal" which provided that the same
> should be signed by the insured or the "beneficiary (if husband or wife),"
> and the beneficiary named therein was plaintiff.   Another blank was pre-
> pared by the agent, called an "application," containing questions as to the
> age, etc., of the insured, to which answers were made by the husband,
> who signed the "application," and reserved the right to change the bene-
> ficiary with the company's consent, and stipulated that payment on
> presentation of the policy and premium receipt book should discharge the
> company.   The policy was then issued, making the "application" a part
> thereof.   Thereafter plaintiff's husband left her, and went to his mother's,
> taking the policy and premium receipt book, and there remained till his
> death.   Previous to his death he changed the beneficiary from plaintiff to
> his mother, with defendant's consent.   *Held*, that the right to change the
> beneficiary was reserved to the husband.

Appeal from Albany county court.

Action by Catharine Cellery against the John Hancock Mutual
Life Insurance Company.   From a judgment of the county court
affirming a judgment of the city court of Albany in favor of plaintiff,
defendant appeals.   Reversed.

On January 12, 1898, the defendant issued a policy, whereby it agreed, in
consideration of 15 cents to be paid to it on noon of Wednesday in each week,
during the life of John J. Cellery, to pay "to the beneficiary hereunder" the
sum of $156 within 24 hours after satisfactory proof of the death of the said
insured, John J. Cellery, subject to certain conditions in such policy con-
tained.   John J. Cellery died on December 23, 1898, and on the 30th day of
that month the defendant paid the amount due under such policy to his mother,
Mary Cellery.   His wife, Catharine Cellery, claims that she was the benefi-
ciary entitled to the amount due thereon, and brought this action in the city
court of Albany to recover the same.   She recovered a judgment in such
court, which was affirmed in the county court, and from such judgment of
affirmance this appeal is brought.   Further facts appear in the opinion.

Argued before PARKER, P. J., and KELLOGG, EDWARDS,
MERWIN, and SMITH, JJ.

George H. Stevens, for appellant.
Richard O. Bassett, for respondent.

PARKER, P. J.   The circumstances under which this policy was
issued are substantially as follows:   A printed blank, called a "Pro-
posal for Industrial Insurance," was produced by an agent of the
company in response to the request of the wife that he insure her hus-
band, which proposal contained certain questions to be answered, viz.
the name, residence, age, place where born, race, and occupation of the
person to be insured, whether the company had ever refused to issue
a policy on his life, whether he was now insured, the amount of the
premium, and the person for whose benefit the insurance is desired.
Upon such blank it was provided that the same, when the answers
were written thereon, should be signed by the "person to be insured,
or the beneficiary (if husband or wife)."   The answers to the ques-
tions were filled out upon such blank, and the same was signed by the

said Catharine Cellery. The person for whose benefit the insurance was desired was therein stated to be "Catharine Cellery," and the premium was given at "15 cents." Another printed blank, called an "Application for Insurance," was at the same time produced by the agent, which contained various questions concerning the age, occupation, relatives, and health of the person to be insured. Answers to such questions were made by said John J. Cellery, and written therein. Under such answers the following provisions were printed, viz.:

"I declare and warrant that the representations and answers made herein are strictly correct and true; that they shall form the basis and become part of the contract of insurance, if one be issued; that any untrue answers will render the policy null and void; and that said policy shall not be binding upon the company unless upon its date the person to be insured shall be alive and in good health. The right is also reserved to change the beneficiary from time to time, with the consent of the company, by written notice to said company; but payment upon presentation of the policy and premium receipt book shall be a discharge to the company."

—And under all was the signature of "John J. Cellery, Applicant," which was witnessed by "E. H. Humphrey, M. D." Thereafter the policy in question was issued. Among other things, it provided as follows:

"If any statement or answer in the application herefor, which application is hereby referred to and made a part hereof, is in any respect untrue, * * * then this policy shall be void."

It further provided:

"This policy and premium receipt book must be returned before any claim can be made."

A copy of such "application" was indorsed upon the back of such policy. The evidence does not disclose that the wife ever had possession of this policy. Although she testifies that for some months she paid the premiums of 15 cents per week out of her own earnings, she does not state that she ever had possession of the book in which they were receipted. Under the evidence she may have paid them through her husband, and the defendant have had no knowledge that it was receiving her money. She testifies that she called the agent to her house, and her husband took out the insurance. In September of such year the husband left his wife, and went to his mother's, was taken sick, and remained there until he died, on December 23, 1898. His mother seems to have paid the premiums of 15 cents per week after the deceased left his wife. On October 8th the husband signed a written application to the company that it make the policy on his life for the benefit of Mary Cellery, his mother. Such application was made upon a blank furnished him by the company, in which was printed a reservation to change the beneficiary, similar to the one above quoted. Upon the back of such blank the agent of the company answered the question, "Why is the change made?" to the effect that the "present beneficiary is unworthy. Neglects, disrespects, and disobeys her husband. A second wife." The company consented to the change, continued to receive the premiums of 15 cents per week from the mother until the death of the insured, and in a few days thereafter received the policy and premium receipt book from the

mother, and paid the amount due on the policy to her. The plaintiff testified that the husband, when he left her, took the policy and book away with him. The wife has been allowed to recover in this action upon the theory that she had taken out this insurance upon her husband's life for her own benefit; that she was the person with whom the company contracted, and that it was to her alone that the right to change the beneficiary was reserved; that, never having consented to a change, she was the person to whom, upon the death of the insured, the policy was payable. Without at all questioning her right to make such a contract, the question arises whether, under the facts of this case, it can be said that she has done so. I think not. It is true that she was the one who asked that the company insure her husband's life for her benefit; and it is possible that she paid the premiums up to about September 14th under the belief that she had a contract with the company to that effect; but, after all, the contract must be found in the writings, and although it would be difficult to hit upon a plan that would be more confusing than the one before us, I conclude that no contract with this plaintiff is contained therein. The application above referred to is by the terms of the policy made a part of the contract, and it is indorsed on the policy. In neither of those papers does the plaintiff's name appear. The proposal which she did sign is not referred to in either of them, and by thus including the application and omitting the proposal it would seem that the intent was to exclude the latter as a part of the contract. In this application, which is signed by the husband himself, is the provision in which is contained the warranty that all the statements contained in such "application" are true. It is the husband who therein agrees that they shall become a part of the contract of insurance, and that a breach of any such warranty shall avoid the policy. It is he who agrees that, unless the insured is alive and in good health when the policy is dated, it shall not be binding upon the company. Surely, each one of these agreements is one that could be effective only when made by the party with whom the company was contracting; and the fact that the husband's signature, instead of the wife's, is signed thereto, repels the idea that the company was contracting with her. So, also, it is in this very provision that the right is reserved to change the beneficiary. To whom can it fairly be said that such right is reserved, save to the very person who has entered into the agreements above stated, and whose signature is subscribed thereto? Had the husband signed the proposal, all the papers would have pointed to the one conclusion that the husband made the contract of insurance for the benefit of his wife, reserving to himself the right to change such beneficiary with the company's consent. Had the wife signed the application, then the contract would have been such a one as she claims to have made, and upon which she has been allowed to recover. The confusion which arises is found in the fact that nowhere in the policy or application is it stated for whose benefit the insurance is desired. The policy agrees upon the death of the insured "to pay to the beneficiary hereunder," and, as above stated, the right is reserved to "change the beneficiary from time to time * * *," but, unless resort is had to the proposal, no beneficiary

has been agreed upon or suggested. Hence it is claimed that the contract is incomplete without incorporating therein the proposal, and that, considering such proposal a part of the written contract, the wife becomes a party to the same. Such a method of obtaining insurance and executing the papers therefor is admirably calculated to confuse all parties to the contract. The wife executes the paper designating the beneficiary; the husband executes the agreement fixing the terms and conditions upon which the policy is issued and the insurance procured. But, whatever may have been the purpose of such a mixture, it must be conceded, I think, that no undertaking can be found in these papers on the part of the company that upon the husband's death the wife alone should be deemed the beneficiary under such policy. Nor can I find any agreement therein that reserves to her the right to name such beneficiary. On the contrary, I cannot avoid the conclusion that such right is, by the terms of the contract, reserved to the husband, and the only part she took in the arrangement was to name a beneficiary to which her husband then assented. Her rights under the contract as it was actually made were those of a beneficiary merely, and were not absolute and irrevocable, inasmuch as the contract itself permitted the husband, with the consent of the company, to change the beneficiary as he might desire. Such was the construction of the contract which the company adopted, and upon which it has acted; and, in my judgment, it was warranted in doing so. The conclusion, therefore, is that both of the judgments were erroneous, and must be reversed.

Judgment of the county court and of the city court reversed on the law and facts, and new trial granted in city court, with costs to appellant in both courts. Order to be settled by EDWARDS, J. All concur.